

1

2

3

4                                                       **E-FILED on**    10/18/05    

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                               SAN JOSE DIVISION

11

12   NATIONAL SEMICONDUCTOR (MAINE),    No. C-05-02893 RMW

INC., a Delaware corporation, formerly known as

13   Fairchild Semiconductor Corporation; and     ORDER GRANTING NCH'S MOTION TO

SCHLUMBERGER TECHNOLOGY          DISMISS NATIONAL'S FOURTH CAUSE OF

14   CORPORATION, a Texas corporation,       ACTION AND DENYING NCH'S MOTION

FOR SANCTIONS

15                  Plaintiffs,

**[Re Docket Nos. 8, 15]**

16             v.

17   NCH CORPORATION, a Delaware corporation,

18                  Defendant.

19

20        National Semiconductor (Maine), Inc. and Schlumberger Technology Corporation (collectively

21   "National") have sued NCH Corporation ("NCH") for alleged groundwater contamination.  NCH moves to

22   dismiss National's fourth cause of action for violation of the Hazardous Substance Account Act ("the

23   HSAA"), Cal. Health & Safety Code §§ 25300 *et seq*.  NCH also moves for sanctions under Federal Rule

24   of Civil Procedure 11 ("Rule 11").  National opposes the motions.  The court has read the moving and

25   responding papers and considered counsels' arguments.  For the reasons set forth below, the court grants

26   NCH's motion to dismiss and denies NCH's motion for sanctions.

27

28

# I. BACKGROUND

This case concerns alleged groundwater contamination on two parcels of land in Sunnyvale: the Arques Parcel and the Kifer Parcel. FAC ¶ 1. According to National, NCH has operated a chemical blending plant at the Kifer Parcel since 1967. *Id*. at ¶ 9. National contends that NCH's activities caused industrial solvents to migrate from the Kifer Parcel to the Arques Parcel. *Id*. at ¶¶ 10-11. National asserts that NCH has not taken adequate remedial measures to stop this migration. *Id*. at ¶ 11.

National alleges that the California Regional Water Quality Control Board ("the Regional Board") issued a series of Orders to NCH, including (1) a Site Cleanup Requirement Order on September 17, 1997, (2) a Notice of Violation on September 28, 1998, and (3) a revised Site Cleanup Requirements Order on October 18, 2000. *Id*. at ¶¶ 12-15. National claims that its predecessor, Fairchild Semiconductor Corporation ("Fairchild"), owned the Arques Parcel until 1972, when it sold the land to Hewlett-Packard Corporation ("HP"). *Id*. at ¶ 16. National contends that both Fairchild and HP have taken environmental remedial actions at the Arques Parcel. *Id*. According to National, despite the fact that the Regional Board's Orders name NCH as a responsible party, NCH has contributed nothing to this effort. *Id*. at ¶ 19. National's fourth cause of action seeks treble damages under Cal. Health & Safety Code § 25359.4.5 ("section 25359.4.5").

# II. ANALYSIS

## A.    Motion to Dismiss

Dismissal under Federal Rule of Civil Procedure Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The court must accept the facts alleged in the complaint as true. *Id*. "A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Gilligan v. Jamco Dev.Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## B.    Statutory Interpretation

The California Supreme Court has explained that a court construing a statute must start with its plain meaning and only examine extrinsic sources if necessary to resolve an ambiguity:

1
2
3
4

[W]e first examine the words of the respective statutes: 'If there is no ambiguity in the language of the statute, then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.  Where the statute is clear, courts will not interpret away clear language in favor of an ambiguity that does not exist.'  If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.

5
6
7

*People v. Coronado*, 12 Cal. 4th 145, 151 (1995) (quoting *Lennane v. Franchise Tax Bd.*, 9 Cal. 4th 263, 268 (1994)).  At the same time, however, a court may disregard "[t]he literal meaning of the words of a statute . . . to avoid absurd results . . . ."  *County of Sacramento v. Hickman,* 66 Cal. 2d 841, 849, n.6 (1967).

8
9

**1.    National's Fourth Cause of Action**

The HSAA provides for treble damages when a polluter ignores a clean-up order:

10
11
12
13
14

A responsible party who has entered into an agreement *with the department* and is in compliance with the terms of that agreement, or who is in compliance with an order issued *by the department*, may seek, in addition to contribution, treble damages from any contribution defendant who has failed or refused to comply with any order or agreement, was named in the order or agreement, and is subject to contribution  . . . . A party seeking treble damages pursuant to this section shall show that the party, the department, or another entity provided notice, by means of personal service or certified mail, of the order or agreement to the contribution defendant from whom the party seeks treble damages.

15
16
17
18
19

Cal. Health & Safety Code § 2539.4.5(a) (emphasis added).  Section 2539.4.5(a) expressly defines "the department" to mean "the Department of Toxic Substances Control," not the Regional Board.  *See* Cal. Heath & Safety Code § 25312.  National does not allege that it has (1) "entered into an agreement" with or (2) "is in compliance with an order issued by" the Department of Toxic Substances Control.  Thus, under the plain meaning of section 2539.4.5(a), National cannot state a cause of action for treble damages.

20
21
22
23
24
25
26
27
28

National offers several reasons why, in its view, "the department" means either the Department of Toxic Substances Control or the Regional Board.  National cites *Lungren v. Deukmejian*, 45 Cal. 3d 727 (1988) and *People v. Sup. Ct.*, 14 Cal. 4th 294 (1996) for the proposition that courts cannot adopt a statute's literal language without examining its purpose.  However, unlike this case, both *Lungren* and *People* involved ambiguous statutes.  *Lungren* resolved whether Article V, section 5(b) of the California Constitution, which provides that a nominee for state office who "is neither confirmed nor refused confirmation by both the Senate and the Assembly within 90 days of the submission of the nomination . . . shall take office" meant that confirmation occurs if one house votes on the nomination and one fails to vote within 90 days.  *Lungren*, 45 Cal. 3d at 734.  As the court acknowledged, the provision was equally

1  susceptible to multiple meanings. *Id*. at 735. *People* involved the issue of whether the term "present

2  source of drinking water" included facet water. *People*, 14 Cal. 4th at 301-02. Like *Lungren*, *People*

3  interpreted a phrase that gave rise to "two reasonable inferences" about its meaning. *Id*. at 302. Both

4  cases thus looked to extrinsic evidence in order to shed light on a patent ambiguity. Here, on the other

5  hand, "the department" is a defined term and does not include the Regional Board. Because section

6  2539.4.5(a) is not ambiguous, the court need not consider National's arguments that extrinsic evidence

7  elucidates that "the department" means either the Department or the Regional Board. Nevertheless, the

8  court briefly discusses each below.

9                        **a.        Overlapping Jurisdiction**

10        The California Department of Environmental Protection oversees both the Department and the

11  Regional Boards. *See* Cal. Gov't Code § 12812. The Department primarily enforces the HSAA.

12  *See* Cal. Health & Safety Code § 58000 *et seq*. The Regional Boards largely administers the Porter-

13  Cologne Water Quality Control Act. *See* Cal. Wat. Code § 13000 *et seq*.

14        National first contends that "in numerous provisions throughout the HSAA, the Department and the

15  Regional Boards are treated by the Legislature as concurrent and co-equal enforcers of the act's

16  provisions." Opp. Mot. Dism. at 9:24-26. National provides the following examples: (1) Health & Safety

17  Code §§ 25355.2 (a) (either the Department or a Regional Board may oversee a site for long term

18  operation and maintenance requirements); (2) *id*. at §25356 (h) ("The department, or, if appropriate, the

19  California regional water quality control board, is the state agency with sole responsibility for ensuring that

20  required action in response to a hazardous substance release . . . at a listed site is carried out in compliance

21  with the . . . requirements set forth in this chapter . . . ."); (3) *id*. at §§25356.1 (b) & (c) (either the

22  Department or the Regional Board shall prepare or approve of remedial action plans at both listed and

23  non-listed sites); (4) *id*. at §25356.1 (i) (Water Code provisions governing Regional Board actions apply to

24  actions taken by the Regional Board under the HSAA); (5) *id*. at §25356.1.5 (response action

25  requirements under the HSAA must be no less stringent than those required under the Water Code); (6) *id*.

26  at §§25358.7 & 253587.1 (public participation requirements apply to both the Department and the

27  Regional Board); (7) *id*. at §25360 (costs incurred by Department or Regional Board are equally

28

ORDER GRANTING NCH'S MOTION TO DISMISS NATIONAL'S FOURTH CAUSE OF ACTION AND DENYING NCH'S
MOTION FOR SANCTIONS—C-05-02893  RMW
DOH                                                    4

1    recoverable); (8) *id*. at §25365.6 (Department or Regional Board may recover costs or damages by a lien

2    on real property owned by the responsible party).

3           However, this argument cuts both ways: the fact that the Legislature saw fit to define the Regional

4    Boards' powers and responsibilities in several sections of the HSAA—but not section

5    2539.4.5(a)—suggests that the Legislature could have included the Regional Board in the statute but chose

6    not to do so.  Under the maxim "expressio unius est exclusio alterius," "[t]he expression of some things in a

7    statute necessarily means the exclusion of other things not expressed."  *Gikas v. Zolin*, 6 Cal. 4th 841, 852

8    (1993).  Thus, National fails to convince the court that the Legislature did not intend to make section

9    2539.4.5(a) the exclusive province of the Department.

10                          **b.        Inconsistencies Within the HSAA**

11          National next asserts that "[t]here are several places where the Legislature's intent to include the

12   Regional Board is manifest in the provision, but references to the Regional Board are mysteriously dropped

13   midway through the provision, creating obviously absurd results."  Opp. Mot. Dism. at 11: 8-10.  For

14   example, National notes that Health & Safety Code 25356.6 governs arbitration under the HSAA, and

15   refers to both the Department and the Regional Board.  However, for no apparent reason, the statute

16   excludes the Regional Board from a key provision:

17              The department, the California regional water quality control board, any party to the
                arbitration decision, or any party substantially affected by the arbitration decision may
18              petition the panel to modify the apportionment of liability in an arbitration decision.  Upon
                a showing of a material change in the facts known to the parties to the arbitration decision
19              at the time it was issued, the panel shall modify the apportionment of liability specified in
                the arbitration decision, as appropriate, to reflect these changed facts.  *Upon a showing*
20              *of a material change in the facts known to the department at the time it issued the*
                *final remedial action plan, or the discovery of new facts, the department or regional*
21              *board shall modify the remedial action plan, as appropriate, to reflect new or*
                *additional facts.*  The arbitration panel shall then modify its arbitration decision to reflect
22              any modification of the remedial action plan made by the department.

23   Cal. Health & Safety Code § 25356.6(b) (emphasis added).  National correctly notes that the statute

24   illogically appears to require both the Department and the Regional Board to modify a plan only if the

25   Department discovers new facts.  National claims that similar deficiencies exist in Health & Safety Code

26   §25356.1 (referring to the Department and the Regional Board throughout, except in subsection (h)(3)

27   where only the Department may determine that certain requirements may be waived); and *id*. at §25365.6

28

ORDER GRANTING NCH'S MOTION TO DISMISS NATIONAL'S FOURTH CAUSE OF ACTION AND DENYING NCH'S
MOTION FOR SANCTIONS—C-05-02893  RMW
DOH                                                           5

1    (enabling both the Department and the Regional Board to recover costs through a lien but exempting only

2    the Department from ownership liability).

3          National's argument is unpersuasive.  Unlike these provisions, which begin by referring both to the

4    Department and the Regional Board and only then inexplicably stop referring to the Regional Board, section

5    2539.4.5(a) never mentions the Regional Board.  Thus, while National's examples may represent the

6    inadvertent exclusion of an agency, the court is not convinced that the same is true for section 2539.4.5(a).

7                    **c.      Section 2539.4.5(a)'s Legislative History**

8          National next argues that section 2539.4.5(a)'s legislative history reveals that it applies both to the

9    Department and the Regional Board.  National notes that the Department drafted section 2539.4.5(a), but

10   the Legislature altered it to "reduce[ ] the extent to which [it] . . . focused on the Department."  Opp. Mot.

11   Dism. at 13:20-21.  For example, the Legislature eliminated the Department's request to approve or deny

12   claims for treble damages and expanded the class of agency mandates that could give rise to such damages.

13   National's Request for Judicial Notice ("RJN") Ex. 1, Tab 1.

14         However, section 2539.4.5(a)'s legislative history indicates that the Legislature enacted the treble

15   damages provision to compensate for a key difference between the Porter-Cologne Act and the HSAA.

16   The Department receives one-half of any treble damage award under section 2539.4.5(a).  *See* Cal. Health

17   & Safety Code § 2539.4.5(b).  As the statute's legislative history reveals, this is because the Porter-

18   Cologne Act permits joint and several liability, while the HSAA does not.  *Compare Union Oil Co. of*

19   *California*, 1990 Cal. ENV LEXIS 23 at *11, Order No. WQ92-3 (SWRCB 1990) (noting that the

20   Regional Boards "consider all dischargers jointly and severally liable for dischargers of waste") *with* Cal.

21   Health & Safety Code § 25363(a) ("any party found liable for any costs or expenditures recoverable under

22   this chapter who establishes by a preponderance of the evidence that only a portion of those costs or

23   expenditures are attributable to that party's actions, shall be required to pay only for that portion").  Joint

24   and several liability makes "each liable party    . . . individually responsible for the entire obligation," and

25   thus permits the Regional Board to be more certain that it will recover full damages.  *See* Black's Law

26   Dictionary 377 (1996).  Section 2539.4.5(a)'s legislative history indicates that the Legislature intended the

27   treble damages provision to give the Department—and only the Department—an especially potent

28   enforcement mechanism.  *See* RJN Ex. 1, Tab 3, at 3 ("[w]ithout potential joint and several liability, there is

1    little leverage to persuade a [responsible party] to clean[] up more than its perceived proportionate share").

2    Accordingly, section 2539.4.5(a)'s legislative history suggests that the Legislature had a rational basis for

3    permitting treble damages under only the HSAA.

**d.      California's Site Designation Program**

5         National argues that "the Legislature also granted the Regional Board *express* authority to act in the

6    shoes of the Department when it is designated as the administering agency under California's Unified

7    Agency Review program." Opp. Mot. Dism. at 15:19-21 (emphasis in original). The Unified Agency

8    Review program permits a responsible party to apply to have a single agency supervise remediation.

9    *See* Cal. Health & Safety Code § 25262. Once the state has granted such an application, the administering

10   agency "ha[s] sole jurisdiction over all activities that may be required to carry out a site investigation and

11   remedial action," including the power to "[a]dminister all [applicable] state and local laws, ordinances,

12   regulations, and standards . . . ." *Id*. at § 25264(a). National's application to have the Regional Board

13   oversee remediation is pending. According to National, once the state grants its application, "the Regional

14   Board [will] act[ ] with the same authority as the Department . . . and its orders should be equivalent to

15   orders issued by the Department for the purposes of the treble damages provision of the HSAA." Opp.

16   Mot. Dism. at 16:16-19; RJN Ex. 6.

17        National's argument lacks merit. Nothing in the statute suggests that designating the Regional Board

18   as administering agency under the site designation program transforms previous orders issued by the

19   Regional Board into orders issued by the Department. In addition, although the statute confers specific

20   powers upon the administering agency, these do not include the power to issue orders. *See* Cal. Health &

21   Safety Code § 25264(a) (noting only that administering agency may "[i]ssue permits"). Thus, even if the

22   state does designate the Regional Board as the agency in charge of remediation at the Arques Parcel,

23   National fails to persuade the court that this will imbue the Regional Board with a host of new enforcement

24   powers.

**e.      Coordination Between the Department and the Regional Boards**

26        Finally, National claims that "the extensive coordination and cooperation between the Department

27   and the Regional Boards makes a cleanup order issued by a Regional Board tantamount to one issued by

28   the Department." Opp. Mot. Dism. at 16:25-26. National cites several Memoranda of Understandings

ORDER GRANTING NCH'S MOTION TO DISMISS NATIONAL'S FOURTH CAUSE OF ACTION AND DENYING NCH'S
MOTION FOR SANCTIONS—C-05-02893 RMW
DOH                                                                          7

1  between the Department and the Regional Boards, which include policy statements such as "[n]either

2  agency will take enforcement actions that are not compatible or complimentary to the enforcement actions

3  of the other agencies."  Memorandum of Understanding Between the Department of Health Services and

4  the State Water Resources Control Board, The Regional Water Quality Control Boards for the Cleanup of

5  Hazardous Waste Sites, August 1, 1990, RJN Ex. 4, at 11 ("the MOU").[1]

6  However, the MOU says nothing about one agency's ability to assume another agency's powers.

7  Instead, National's cited language simply requires both agencies not to contradict the other's enforcement

8  actions.  Moreover, the MOU makes clear that the Department and Regional Boards must continue to act

9  "within their respective authorities, jurisdiction, and expertise."  MOU at 5.  Because the MOU does not

10  suggest that the Regional Board may step into the Department's shoes whenever it would be pragmatic to

11  do so, the court rejects National's assertion.

12  **B.     Motion for Sanctions**

13  NCH moves for Rule 11 sanctions against National for asserting its fourth cause of action.  Rule 11

14  empowers courts to award sanctions against parties who make baseless factual or legal contentions.  Rule

15  11 exempts, however, "nonfrivolous argument[s] for the extension, modification, or reversal of existing law

16  or the establishment of new law."  Here, no case of which this court is aware has interpreted section

17  2539.4.5(a).  Thus, National's fourth cause of action, at worst, constitutes a non-frivolous attempt to break

18  new ground interpreting an exceedingly complex statute.  The court denies NCH's motion for sanctions.

19

20

21

22

23

24

25

26

27  [1]     In addition, National notes that the Ninth Circuit has held that knowledge held by a
Regional Board can be imputed to the Department.  *See In re Jensen*, 995 F. 2d 925, 931 (9th Cir.
28  1993).  Of course, this issue has no bearing on whether the Legislature intended "the department" to mean
the Regional Board in section 2549.4.5(a).

ORDER GRANTING NCH'S MOTION TO DISMISS NATIONAL'S FOURTH CAUSE OF ACTION AND DENYING NCH'S
MOTION FOR SANCTIONS—C-05-02893  RMW
DOH                                   8

1

### III.  ORDER

2
      For the foregoing reasons, the court grants NCH's motion to dismiss National's fourth cause of

3
action with prejudice and denies NCH's motion for sanctions.

4

5

6
DATED:        10/18/05                         /s/ Ronald M. Whyte

7
                                                        RONALD M. WHYTE
                                                        United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff(s):**

Richard Craig Coffin          rcc@bcltlaw.com
Jon Goddard Lycett           jgl@bcltlaw.com
Thomas D. Trapp              tdt@beltlaw.com

**Counsel for Defendant(s):**

William David Wick           bwick@ww-envlaw.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** _____10/18/05_____          _____DOH_____
                                       **Chambers of Judge Whyte**

ORDER GRANTING NCH'S MOTION TO DISMISS NATIONAL'S FOURTH CAUSE OF ACTION AND DENYING NCH'S
MOTION FOR SANCTIONS—C-05-02893  RMW
DOH                                          10